IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

RYAN WOODHOUSE,

    Plaintiff,

v.                                                Case No. 13-cv-310

CITY OF LA CROSSE, WISCONSIN;

STEVE CARLYON,
in his official capacity as Director of Parks &
Recreation for City of La Crosse;

RONALD TISCHER,
in his official capacity as Chief of Police
for City of La Crosse Police Department;

KIRK FLATTEN,
individually and in his official capacity as
Sergeant for the City of La Crosse Police
Department; and

TIMOTHY O'NEILL,
individually and in his official capacity as
police officer for the City of La Crosse Police
Department,

    Defendants.

**VERIFIED COMPLAINT**

    Comes now Plaintiff Ryan Woodhouse and avers the following:

**INTRODUCTION**

    1.    This is a civil rights action challenging city policy and practices that act to eliminate disfavored individual and small group religious expression, including literature

3

distribution, public speaking, and one-on-one conversations, in Riverside Park, a public park, during Riverfest, an event that is free and open to the public.

2. Under 42 U.S.C. §§ 1983 and 1988, Plaintiff Ryan Woodhouse pursues injunctive relief, declaratory relief, nominal damages, attorney fees and expenses against Defendants City of La Crosse, Wisconsin, Steve Carlyon, in his official capacity as Parks & Recreation Director for the City of La Crosse, Ronald Tischer, in his official capacity as Chief of Police for City of La Crosse Police Department, Kirk Flatten, individually and in his official capacity as Sergeant for the City of La Crosse Police Department, and Timothy O'Neill, individually and in his official capacity as Police Officer for the City of La Crosse Police Department.

3. This action is premised on the United States Constitution regarding the deprivation of Plaintiff's fundamental rights to free expression and due process.

4. Defendants' actions have deprived and will continue to deprive Plaintiff of his fundamental rights as provided in the First and Fourteenth Amendments to the United States Constitution.

5. Each and every act of Defendants alleged herein was committed by Defendants named herein, and each and every act was committed under the color of state law and authority.

**JURISDICTION AND VENUE**

6. Pursuant to 28 U.S.C. §§ 1331 and 1343, this Court has jurisdiction over Plaintiff's claims. Pursuant to 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction over Plaintiffs' request for declaratory relief.

2

7. Pursuant to 28 U.S.C. § 1391(b), venue is proper in Western District of Wisconsin, because all claims arise out of this district and all parties reside in this district.

**PARTIES**

8. Plaintiff Ryan Woodhouse ("Woodhouse") resides in Chaseburg, Wisconsin.

9. Defendant City of La Crosse, Wisconsin ("La Crosse") is a municipal governmental authority, a subdivision of the State of Wisconsin. La Crosse owns, maintains, and regulates activities for public parks in the city.

10. Defendant Steve Carlyon ("Director Carlyon") is the Director of Parks & Recreation for La Crosse. In his official capacity, he is responsible for overseeing and implementing all policies affecting parks and recreation in the city. Director Carlyon is sued in his official capacity.

11. Defendant Ronald Tischer ("Chief Tischer") is the Chief of Police for the La Crosse Police Department. In his official capacity, Chief Tischer is responsible for overseeing and implementing all polices affecting law enforcement, including law enforcement in public parks. Chief Tischer is sued in his official capacity.

12. Defendant Kirk Flatten ("Sergeant Flatten") is a sergeant with La Crosse Police Department. In his official capacity, Sergeant Flatten is charged with enforcing La Crosse laws, policies and regulations, including those pertaining to activities in public parks. Sergeant Flatten is sued in his official and individual capacities.

13. Defendant Timothy O'Neill ("Officer O'Neill") is a police officer with La Crosse Police Department. In his official capacity, Officer O'Neill is charged with

enforcing La Crosse laws, policies and regulations, including those pertaining to activities in public parks. Officer O'Neill is sued in his official and individual capacities.

## STATEMENT OF FACTS

**Woodhouse's Religious Speech**

14. Woodhouse is an evangelical Christian who feels called to express his Christian beliefs and convictions to others in public. Because of his faith, as well as his concern and love for people, Woodhouse is obliged to share what he refers to as the "gospel," that being, the good news of Jesus Christ.

15. To share his deeply-held beliefs, Woodhouse goes to public places and attends public events. He expresses his religious beliefs through various means, namely, literature distribution, open-air speech and one-on-one conversations.

16. For Woodhouse, literature distribution to be a critical form of communication because his literature – referred to as gospel tract – allows him to convey the entirety of his religious message to individuals who are unable or unwilling stay in one place and hear his oral remarks. A passerby can take a tract and contemplate the information later.

17. Woodhouse also wants to speak publically open-air and engage in friendly discussions. Woodhouse tries to attract people to come to him and dialogue about his Christian faith. He likes interaction with others responding, commenting, and asking him questions.

18. Often, Woodhouse conducts these expressive activities in public by himself. He also has the occasion to convey his beliefs in public as part of a small group.

19. Woodhouse's message focuses on the impact of sin and the need for redemption through faith in Jesus Christ.

20. In conducting this expressive activity, Woodhouse does not seek money or signatures. He does not ask anyone to join in any organization.

21. Woodhouse does not harass anyone or encourage violence. He does not force anyone to listen to him or accept his literature.

22. Woodhouse does not block passageways or hinder pedestrian access. He is always willing to step aside and let others pass while engaging in his religious expression.

23. On several different occasions, Woodhouse has shared his beliefs in Riverside Park, a public park in La Crosse. He wants to share his Christian beliefs in Riverside Park during Riverfest.

**Riverside Park**

24. Riverside Park is a large river-side public park in downtown La Crosse, Wisconsin that sits at the confluence of three rivers, Mississippi, La Cross, and Black. It is west of Front Street and bound by Veterans Memorial Drive and State Street.

25. Riverside Park is dedicated to open and free use by the general public. The park contains wide-open grassy areas, benches, courtyards, fountains, and a variety of sidewalks, including Riverwalk, a pathway designed for pedestrian travel on the bank of the Mississippi River.

26. Riverside Park also contains various attractions for the public, including a stage band for concerts, International Festival Gardens, Riverside Museum, and the La Crosse Convention and Visitors Bureau.

27. The public utilizes in open, accessible spaces in Riverside Park all year round for various activities, including sight-seeing, picnicking, walking, jogging, and Frisbee throwing. Riverside Park is uniquely well-suited for expression and the free exchange of ideas.

**Riverfest**

28. Riverside Park is home to Riverfest, an annual event that has taken place in the park since 1983. Riverfest is organized and put on by Riverfest, Inc.

29. Riverfest is a Fourth of July celebration that spans four to five days around the holiday.

30. At all times, Riverfest is open to the general public, offering a multitude of events geared toward the community, like the Arts & Crafts Fair, Dunk Tank, Food & Beverage Fair, Moose Bingo, Bungee Trampoline Teen Activities, and children's games. There are also competitive events during the festival, like Coulee Region Youth Cornhole Competition, Pole Jumping Competition, "Puttin' on the Lips" lip-sync competition, in addition to foot and bike races.

31. During the course of Riverfest, Riverside Park hosts a July 4th parade, an outdoor movie, a fireworks display, among other activities.

32. No gates or barriers limit access to Riverside Park during Riverfest. There is no cost for admission and there is no need for a ticket to enter in Riverside Park. Just as it is during all other times, Riverside Park is accessible during Riverfest, allowing citizens to roam free within the park and participate in a wide variety of activities that are not connected to the event.

**Censoring of Woodhouse's Expression in Riverside Park during 2012 Riverfest**

6

33.     On July 4, 2012, Woodhouse went to Riverside Park to express his religious beliefs via literature distribution, public speaking, and conversation.

34.     Woodhouse chose this particular date and place because he knew the 2012 Riverfest was taking place in Riverside Park, promising a significant number of people that could be exposed to his Christian message. He wanted to reach the audience that would be at the park for Riverfest.

35.     Woodhouse did not want to participate in any of the festival activities; neither did he want to disrupt any of those activities. He only wanted to place himself in an open, accessible area in the park and convey his Christian message – a message that would be distinct from any message presented by Riverfest, its organizers, or any of its sponsors.

36.     Woodhouse arrived that afternoon. As expected, Riverside Park was open to the public that day.

37.     Woodhouse did not need a ticket to get in. Admission was free. And there were no barriers preventing access to Riverside Park.

38.     Woodhouse did notice, however, a sign at the entrance of the park stating that literature distribution was prohibited.

39.     This news was disconcerting to Woodhouse. The park rule eliminated a major component of his expression. Notwithstanding, Woodhouse was determined to go in Riverside Park and share his message via oral communication.

40.     Because it was hot that day, Woodhouse found an accessible spot under the shade of a tree about fifty yards north of the traffic circle of State Street, in the grass between the sidewalk and street.

7

41. Woodhouse stood there in the shade, and out of the way of any pathways, where he could not block any pedestrian flow. Once situated, he began sharing his Christian message by proclaiming his beliefs.

42. A few minutes later, Woodhouse was approached by an unidentified festival worker who instructed Woodhouse to leave.

43. Woodhouse was taken aback by the directive. He discussed the public nature and accessibility of Riverside Park with the festival worker.

44. Reiterating the request to leave, the festival worker advised that they did not want his speech there.

45. Knowing that he was speaking in a public area during a public event, Woodhouse declined to leave.

46. Subsequently, Sergeant Flatten and Officer O'Neill with the La Crosse Police Department approached Woodhouse. Sergeant Flatten directed a series of questions at Woodhouse relating to his identification and personal information.

47. Woodhouse supplied the officer with the requested information, but he was surprised by the questioning. After being asked about his employment, Woodhouse asked if there was a reason why the officers were seeking the information. Sergeant Flatten replied that it was just one of the blocks they had to fill out.

48. Sergeant Flatten also inquired about materials Woodhouse had in his possession, asking him if he was planning on handing out anything. Woodhouse explained that he had some gospel tracts, but he had not handed them out.

49. Woodhouse then inquired about any particular laws he was breaking with his activity. Officer O'Neill answered that Riverfest did not want him there.

8

50. Woodhouse pointed out that the First Amendment gives him freedom of speech and with that, the freedom to express his views and hand out materials.

51. Officer O'Neill responded that he knows the Constitution, he is well-versed in the Constitution, having worked his job for a long time, and knows about Woodhouse's rights.

52. Following up on that remark, Woodhouse commented that the officer must then know that his speech cannot be restricted in public area when no fee is charged.

53. Instead of addressing that issue, Officer O'Neill said: "You're being awful nice but giving me attitude at the same time."

54. Woodhouse was confused by the comment. He and Officer O'Neill carried on a conversation about whether Woodhouse was telling him how to do his job and Woodhouse clarified that he just confirming his understanding of the law.

55. After clearing up that misunderstanding, Officer O'Neill asked Woodhouse why he was out there in the heat. Woodhouse said he wanted to tell people about Jesus Christ and he showed the officer one of his tracts expounding on his message.

56. Sergeant Flatten joined the conversation again, advised that they did some checking, confirmed that Riverfest, Inc leased the park from the city, and concluded, "so then they technically have proprietary rights down here and they can ask you to leave and you do have to follow that." The Sergeant demanded: "You have to leave."

57. The police officers, in addition to enforcing the park rule about literature distribution, were now requiring Woodhouse to cease all forms of communication and leave the area under threat of arrest because of the belief that Riverfest, Inc. controlled the property.

58.     Sergeant Flatten elaborated that he just talked to one of the head guys in the Parks department who confirmed that Riverfest, Inc. leases the property and Woodhouse would have to leave.

59.     Woodhouse knew that he should have the freedom to speak in a public park during an event open to the public.

60.     Woodhouse advised the police officers that his message might offend some, but he still has a right to speak in a public place during a public event.

61.     Woodhouse inquired: "So basically if I continue doing what I'm doing, I'm going to get arrested?"  Sergeant Flatten confirmed: "You'll be charged with trespassing."

62.     Woodhouse went on to expound on his understanding that even if the park was leased, as long as a fee is not charged, he should be allowed to come in and engage in expression.

63.     The police officers disagreed.  Sergeant Flatten said: "It is proprietary, so, technically they're the property the property owners of it, okay.  So they can tell you that you cannot come in….Alright?  Sound good?"

64.     It did not sound good.  Woodhouse knew the police officers were incorrect, but he did not want to get arrested, so, he told them he appreciated all the work they do and complied with the order.

65.     The conversation then concluded and Woodhouse left Riverside Park for fear of arrest.

66.     If not for the park rule prohibiting literature distribution and the order from the police officers, Woodhouse would have continued to distribute literature, speak

and engage in conversation about his religious beliefs in Riverside Park during the Riverfest that day and other days during the 2012 festival.

**La Crosse's Refusal to Lift Ban on Woodhouse's Speech**

67. Woodhouse found the situation intolerable because he wanted to return to Riverside Park for future Riverfests, including the 2013 Riverfest, as well as other future events, and express his religious beliefs.

68. In an attempt to remedy this situation short of litigation, Woodhouse, through counsel, sent a letter facsimile and first class on October 24, 2012 to Director Carlyon, Chief Tischer, and Stephen F. Matty, esq., La Crosse City Attorney, seeking relief.

69. This letter described the events that occurred on July 4, 2012 and explained why the city's treatment of Woodhouse violates the U. S. Constitution.

70. Citing pertinent case law, the letter stresses that Woodhouse has a constitutional right to speak in a public forum during the festival, that neither the city nor the festival organizer had altered the nature of the public forum during the festival, and that the ban on Woodhouse was unconstitutional. This letter asked that La Crosse officials to allow Woodhouse to engage in his desired expressive activities in Riverside Park during the upcoming Riverfest in 2013 and during future festivals. This letter also requested that La Crosse officials provide a timely written response, by November 15, 2012, to ensure the protection of Woodhouse's First Amendment rights.

71. On November 15, 2012, the City Attorney responded to Woodhouse's pleas, but no relief was forthcoming. The letter only recites the deadline for a response and states that the city legal department is still looking into the matter.

72. Knowing that written assurance was needed soon because the festival would be coming again in 2013, and Woodhouse wanted to go and speak without fear of arrest, counsel for Woodhouse wrote back to the La Crosse City Attorney on the following day, November 16, 2012, elaborating that the deadline was sought to assure relief before the upcoming Riverfest. The letter also asks how much time the city department would need to look into the matter.

73. Woodhouse waited for a response, either assuring the freedom to speak during Riverfest or specifying need for additional time. Months passed, and to date, no further response has come.

74. In light of the actions of La Crosse police officers banning Woodhouse's expression and the lack of response from the City Attorney, Woodhouse has every reason to believe his expression will be censored in Riverside Park during the 2013 Riverfest.

**Irreparable, Immediate and Continuing Impact on Woodhouse's Speech**

75. La Crosse Municipal Code 10.03 provides rules and regulations for city parks.

76. Section 10.03 (M), entitled "DISTRIBUTING OR POSTING CIRCULARS PROHIBITED" reads in pertinent part: "No person shall distribute any circulars, cards or any other printed or written matter, excepting programs of concerts or entertainments, unless permission has been obtain from the Park Board or Park Director."

77. La Crosse also has on-going policy that treats the permit arrangement between Riverfest, Inc. and City of La Crosse as proprietary and Riverfest, Inc. like

property owners of Riverside Park during Riverfest, allowing Riverfest to censor unwanted expression on the public property.

78. Woodhouse strongly desires to return to Riverside Park this July of 2013 for the next Riverfest event, but he is deterred from coming and speaking due to his fear of arrest. When Woodhouse was last there during the festival, he was warned that he would be arrested for engaging in his expressive activity. And despite efforts to get relief from the ban, he has not obtained the needed relief from La Crosse officials.

79. The fear of arrest severely limits Woodhouse's constitutionally-protected expression in Riverside Park during Riverfest.

80. The impact of chilling and deterring Woodhouse from exercising his constitutional rights in Riverside Park during Riverfest constitutes irreparable harm to him.

81. Woodhouse does not have an adequate remedy at law for the loss of his constitutional rights.

## FIRST CAUSE OF ACTION

### Violation of Free Speech Clause

82. Woodhouse's religious expression is protected speech under the First Amendment.

83. Defendants' policies and practices, and enforcement thereof, including, but not limited to, the banning of literature distribution and banning of unwanted expression during Riverfest:

    a. are vague and overbroad;

    b. single out religious speech for discriminatory treatment;

13

    c.    discriminate against speech because of its content;

    d.    discriminate against speech on the basis of the speaker's viewpoint;

    e.    restrain constitutionally-protected speech in advance of its expression, without appropriate guidelines or standards to guide the discretion of officials charged with enforcing the policy;

    f.    chill the free speech and free exercise of religion of Woodhouse and of other third party citizens;

    g.    allow the exercise of unbridled discretion;

    h.    create a content-based heckler's veto that allow Woodhouse to be silenced because of hostile audiences;

    i.    lack narrow tailoring, fail to achieve any legitimate government purpose, and fail to leave open alternative avenues for expression; and

    j.    are unreasonable.

84. Defendants have no compelling or legitimate reason that can justify their censorship of the religious viewpoints sought to be expressed by Woodhouse.

85. Defendants' policies and practices, and the enforcement thereof, thus violate the Free Speech Clause of the First Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment.

86. WHEREFORE, Woodhouse respectfully prays that the Court grant the equitable and legal relief set forth in the prayer for relief.

## SECOND CAUSE OF ACTION

### Violation of Due Process Clause

87. Defendants' policy banning of unwanted expression during Riverfest is vague and lacks sufficient objective standards to curtail the discretion of officials. This allows Defendants ample opportunity to enforce the policies in an *ad hoc*, arbitrary, and discriminatory manner.

88. Defendants have no compelling or legitimate reason that can justify their vague policy.

89. The policy and Defendants' enforcement thereof violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

WHEREFORE, Woodhouse respectfully prays that the Court grant the equitable and legal relief set forth hereinafter in the prayer for relief.

## PRAYER FOR RELIEF

WHEREFORE, Woodhouse respectfully prays for relief in that this Court:

A. Assume jurisdiction over this action;

B. Enter a judgment and decree declaring La Crosse Municipal Code 10.03 (M), barring literature distribution in public parks unless permission is secured from Park Board or Park Director, and enforcement thereof, are unconstitutional on their face and as applied to Woodhouse's literature distribution because it violates Woodhouse's rights and the rights of third parties not before the Court, as guaranteed under the First and Fourteenth Amendments to the United States Constitution;

C. Enter a judgment and decree declaring that the policy allowing Riverfest, Inc. to censor unwanted speech and Defendants' enforcement thereof, are unconstitutional on their face and as applied to Woodhouse's desired speech (literature distribution, public speech, one-on-one dialogue), because it violates Woodhouse's rights

and the rights of third parties not before the Court, as guaranteed under the First and Fourteenth Amendments to the United States Constitution;

  D. Enter a preliminary and permanent injunction enjoining Defendants, their agents, officials, servants, employees, and all persons in active concert or participation with them, or any of them, from applying La Crosse Municipal Code 10.03 (M), or any other policy or practice, so as to restrict literature distribution of speakers, including Woodhouse, in Riverside Park during Riverfest;

  E. Enter a preliminary and permanent injunction enjoining Defendants, their agents, officials, servants, employees, and all persons in active concert or participation with them, or any of them, from applying the policy banning speech disfavored by Riverfest, Inc. or any other policy or practice, so as to restrict constitutionally-protected speech of speakers, including Woodhouse, in Riverside Park during Riverfest;

  F. Adjudge, decree, and declare the rights and other legal relations with the subject matter here in controversy, in order that such declaration shall have the force and effect of final judgment;

  G. That this Court award Plaintiff Woodhouse nominal damages arising from the acts of the Defendants as an important vindication of the constitutional rights;

  H. That this Court award Plaintiff Woodhouse costs and expenses of this action, including reasonable attorneys' fees, in accordance with 42 U.S.C. § 1988 and other applicable law; and

  I. Grant such other and further relief as appears to this Court to be equitable and just.

Respectfully submitted,

        BY:    <u>/s/ Nathan W. Kellum</u>
                NATHAN W. KELLUM
                TN BAR #13482; MS BAR # 8813
                Center for Religious Expression
                699 Oakleaf Office Lane, Ste. 107
                Memphis, TN 38117
                (901) 684-5485 – Telephone
                (901) 684-5499 – Facsimile
                nkellum@crelaw.org

                Attorney for Plaintiff Ryan Woodhouse

## **VERIFICATION OF COMPLAINT**

I, Ryan Woodhouse, a citizen of the United States and a resident of Chaseburg, Wisconsin, hereby declare that I have read the foregoing Verified Complaint and the factual allegations therein, and the facts as alleged therein are true and correct.

*/s/ Ryan Woodhouse*
RYAN WOODHOUSE